UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON RICKMAN,

       *Plaintiff,*                      CASE NO. 11-CV-13079

*v.*                                DISTRICT JUDGE AVERN COHN
                                MAGISTRATE JUDGE CHARLES BINDER

MICHELINE TANTCHOU, M.D.;
SCOTT FRIESORGER;
JEFF SHAW;

       *Defendants.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS FRIESORGER AND SHAW'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 11)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

## II.    REPORT

### A.    Introduction

Plaintiff Milton Rickman, a state prisoner currently housed at the Chippewa Correctional Facility in Kincheloe, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was incarcerated at the Pine River Correctional Facility ("SPR") in St. Louis, Michigan. (Compl., Doc. 1.) On August 22, 2011, Plaintiff's motion to proceed without prepayment of fees and costs was granted by U.S. Magistrate Judge R. Steven Whalen, who also directed that the U.S. Marshal serve the complaint on all

defendants. (Docs. 6, 8.) The same day, U.S. District Judge Avern Cohn entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 7.)

On November 2, 2011, Defendants Friesorger and Shaw[1] filed a motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies with regard to all claims brought against them. Plaintiff filed a response in opposition to the motion on December 7, 2011. (Doc. 16.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B.    Plaintiff's Allegations

Plaintiff states that in 2009 Defendant Dr. Tantchou approved Plaintiff's request for a double mattress because Plaintiff suffers from "Brachial Plexus, resolving but persistence of numbness on the left side." (Compl., Doc. 1 ¶ 18.)

Plaintiff further states that on May 21, 2010, he filed a grievance against Defendant Jeff Shaw, a resident unit officer at SPR, alleging that Officer Shaw had been watching another inmate's television. (*Id.* ¶ 19.) One month later, on June 22, 2010, Plaintiff's double mattress was taken from his cell. Plaintiff asserts that when he asked Defendant Officer Friesorger what happened to his double mattress, Friesorger responded that Plaintiff should "stay out of the weight pit." (*Id.* ¶ 21.)

Plaintiff filed a grievance about the removal of his double mattress. He asserts that when he was interviewed about the grievance by Nurse Bailey, the nurse told him that Defendant Dr. Tantchou (who by this time was no longer employed at the facility) had left a note in the file

---

[1]Defendant Tantchou, M.D., has not yet been served despite several attempts.

"stating: THAT the G-Unit Officer Shaw and Officer [Friesorger] told her that plaintiff had been lifting weights, and that his special accommodation detail should be cancelled." (*Id.* ¶ 22.)

Plaintiff alleges in his complaint that the defendants conspired to have his double mattress taken away in retaliation for his earlier grievance about Defendant Shaw watching television in another inmate's room, and claims that this retaliation was in violation of his First Amendment rights. (*Id.* ¶ 26.) Plaintiff further claims that the removal of the double mattress violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process because the policy directives of the Michigan Department of Corrections provide that a special accommodation not be cancelled without the inmate first being examined by a physician. (*Id.* ¶ 37.)

### C.   Summary Judgment Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving

party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D.    Analysis and Conclusions

Defendants Shaw and Friesorger (hereafter "Defendants") assert that they are entitled to summary judgment because Plaintiff failed to satisfy the exhaustion rule, which is a precondition

to filing suit. Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R).[2]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

---

[2]The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

In the instant case, Defendants have provided an affidavit from Richard Russell, Manager of the Grievance Section of the MDOC, wherein Russell avers that while Plaintiff was incarcerated at SPR in 2009 and 2010, he submitted four grievances that were appealed through Step III. (Russell Aff., Doc. 11, Ex. B ¶ 18.)

The first grievance, SPR-09-09-0501-15a (Doc. 11 at Ex. D), concerned Plaintiff's allegation that the Uniform Commercial Code documents found in his cell should not have been considered contraband. In the second grievance, SPR-09-09-0521-02c (Doc. 11 at Ex. E), Plaintiff asserted that he was not receiving his full-time pay even though he was working a full-time job. In the third grievance, SPR-09-10-0603-02c (Doc. 11 at Ex. C), Plaintiff alleged that a corrections officer, Officer Robertson, altered the employment log where Plaintiff's hours were recorded to reflect fewer hours worked. The fourth grievance, SPR-10-01-0031-14a (Doc. 11 at Ex. F), asserted that Ms. Sorenson was denying Plaintiff adequate time in the law library in retaliation for grievances he filed against her in the past.

Clearly, none of these grievances have any relevance to this case. Thus, Defendants move for summary judgment on the grounds that Plaintiff failed to properly exhaust his administrative remedies because he did not complete the grievance process through all three steps with regard to the claims asserted against Defendants Shaw and Friesorger.

Plaintiff responds, alleging that he did file a grievance about this incident and that he attempted to appeal it through Step III. (Doc. 16.) He claims that he "entered a step 3 grievance on 8/5/10, in which plaintiff sent a copy of that disbursement to this Court showing the date that plaintiff sent his step 3 to lansing [sic], plaintiff is also entering a copy of his step 3 grievance that plaintiff handwrit [sic] on 8/5/10, showing what the grievance said." (Doc. 16, Br. at 1.) He states that these documents were attached to his complaint. (*Id*. at 3.)

7

Attached to Plaintiff's complaint is a copy of grievance SPR-10-06-0520-12i, wherein Plaintiff reported that his medical detail for a double mattress was taken away from him without an examination. He asserted in the Step I grievance that "Micheline Tantchou taking me off of my special acc. detail without an examination is a violation of my Eight Amend. [sic] right and violation of policy directive 04.06.160." (Compl., Doc. 1, Ex. at 5.) Nowhere in the grievance were Officers Shaw and Friesorger mentioned. (*Id*.) The grievance was denied at Step I on July 1, 2010, by Nurse Heather Bailey, who stated that the "Medical Provider (MP) rewrote a medical detail taking off the double mattress due to grievance was lifting weights in the weight pit. At this time a double mattress is not medically indicated." (*Id*. at 6.) Plaintiff appealed to Step II, and on August 3, 2010, the Step II respondent upheld the Step I finding. (*Id*. at 4.) Contrary to Plaintiff's assertion, there is no "disbursement" attached to the complaint showing that a Step III appeal was ever submitted.

I suggest that Defendants have shown that Plaintiff failed to properly exhaust the claims brought against them. Even if grievance SPR-10-06-0520-12i had been properly appealed to Step III, it did not mention Defendants Shaw or Friesorger or assert that Plaintiff had been a victim of retaliation. The MDOC's rules require that:

> Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

MDOC P.D. 03.02.130(R). As recently as 2011, the Sixth Circuit has confirmed that proper exhaustion in compliance with the rules of the MDOC's grievance policy is a prerequisite to suit:

> The PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires "proper" exhaustion, which includes compliance with a state agency's timeliness deadlines. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

> effectively without imposing some orderly structure on the course of its
> proceedings."); *see also id*. at 93, 126 S. Ct. 2378 ("[W]e are persuaded that the
> PLRA exhaustion requirement requires proper exhaustion.").

*Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). In this case, Defendants raised the affirmative defense and submitted an affidavit and documentation in support, and Plaintiff has failed to refute Defendants' assertion that no Step III appeal was submitted. Furthermore, even if Plaintiff had shown that he appealed the grievance to Step III, the claims against Defendant Shaw and Friesorger nonetheless remain unexhausted because the grievance was not filed against them, but only against Defendant Tantchou.

The Court also notes that, despite Plaintiff's statement in his complaint that he didn't learn of the involvement of Officers Shaw and Friesorger until the interview with Nurse Bailey regarding his Step I grievance (Compl., Doc 1 ¶ 22), Plaintiff has never alleged that after he learned of the involvement of these officers, he filed a Step I grievance against them.

Accordingly, I suggest that Defendants' motion for summary judgment be granted.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

s/ Charles E Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: March 7, 2012

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Joshua Marcum, and served by first class mail on Milton Rickman, #252749, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI, 49784.

Date:  March 7, 2012          By   s/Jean L. Broucek
                                  Case Manager to Magistrate Judge Binder