UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON RICKMAN,

    Plaintiff,

v.                                                         Case No. 11-13079

MICHELINE TANTCHOU, M.D.,              HON. AVERN COHN
SCOTT FRIESORGER, and
JEFF SHAW,

    Defendants.

_____/

**MEMORANDUM AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION (Doc. 28)**
**AND**
**GRANTING SCOTT FRIESORGER AND JEFF SHAW'S MOTION FOR SUMMARY JUDGMENT (Doc. 11)**
**AND DISMISSING CLAIMS AGAINST FRIESORGER AND SHAW WITHOUT PREJUDICE**

I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff, proceeding pro se, claims that defendants have violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff's claims stem from having his medical detail for a double mattress removed.  Plaintiff alleges that defendant Micheline Tantchou (Tantchou),[1] a physician, improperly removed the medical detail in violation of his Eighth Amendment right to be free of cruel and unusual punishment and his

---

[1] Tantchou has not been served, despite several attempts.  On March 23, 2012, the magistrate judge issued a report and recommendation that Tantchou be sua sponte dismissed without prejudice for failure to effect timely service.  (Doc. 30).  To date, plaintiff has not objected to the recommendation.

Fourteenth Amendment right to due process based on policy directives from the Michigan Department of Corrections (MDOC).  Plaintiff further alleges that defendants Scott Friesorger (Friesorger) and Jeff Shaw (Shaw), employees of the MDOC, conspired to have his double mattress taken away in retaliation for an earlier grievance plaintiff filed against Shaw, in violation of his First Amendment rights.  The matter was referred to a magistrate judge for all pretrial proceedings, before whom defendants Friesorger and Shaw filed a summary judgment motions on the grounds that plaintiff had failed to exhaust his administrative remedies as to them.  (Doc. 11).

The magistrate judge issued a report and recommendation (MJRR) recommending that defendants' motion be granted.  Before the Court are plaintiff's objections to the MJRR.  For the reasons that follow, the Court agrees with the magistrate judge that plaintiff has not exhausted his administrative remedies against these defendants.  As such, the MJRR will be adopted, defendants' motion will be granted, and plaintiff's claims against Friesorger and Shaw will be dismissed without prejudice.

II.  Review of the MJRR

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).

2

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context.  <u>Howard v. Sec'y of Health and Human Servs.</u>, 932 F.2d 505, 508 (6th Cir. 1991) ("It is arguable in this case that Howard's counsel did not file objections at all.... [I]t is hard to see how a district court reading [the 'objections'] would know what Howard thought the magistrate had done wrong.").

### III.  Legal Standards and MDOC Policy

In <u>Jones v. Bock</u>, 549 U.S. 199 (2007), the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." <u>Id</u>. at 923.  The Supreme Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. <u>Id</u>.  Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. <u>Id</u>.  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. <u>Kramer v. Wilkinson</u>, 226 F. App'x 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits).” Woodford v. Ngo, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93, quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." Jones, 127 S.Ct. at 915–16.

As explained in the MJRR, the applicable MDOC grievance procedure is as follows:

> The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. See MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:
>> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what,

> when, where, why, how).  Dates, times, places **and names of all those involved in the issue being grieved are to be included**.
> MDOC PD 03.02.130(R).
>    If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X).  If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB).  Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF).  The Step III response concludes the administrative grievance process.

MJRR at p. 6 (internal footnote omitted) (emphasis added).

## IV.  Analysis

As the magistrate judge stated, plaintiff filed a grievance regarding the removal of his double mattress.  However, the grievance named only Tantchou and claimed a violation of his First and Fourteenth Amendment rights.  While plaintiff says he sent a Step III response, the MDOC does not have a record of receiving it.  Regardless, even assuming plaintiff pursued his grievance through Step III, he still did not exhaust his administrative remedies as to Friesorger and Shaw because (1) they were not named in the grievance and (2) his claims against they are different than his claims against Tantchou.  While plaintiff says he was not aware of Friesorger and Shaw's alleged involvement in the removal of his medical detail for the double mattress until his grievance was denied at Step I, that does not change the fact that plaintiff never pursued a grievance against Friesorger or Shaw.  As such, his claims against them are not exhausted under MDOC policy and applicable case law.[2]

---

[2]Plaintiff cites Robinson v. Johnson, 343 Fed. App'x 778, 781-82 (3d Cir. 2009) to support his argument that he was not required to name all defendants in his grievance to show exhaustion.  Robinson is not controlling.  That case dealt with the exhaustion

V.  Conclusion

For the reasons stated above, the MJRR is ADOPTED as the findings and conclusions of the Court, as supplemented above.  Friesorger and Shaw's motion for summary judgment is GRANTED.  Plaintiff's claims against these defendants are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  April 12, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 12, 2012, by electronic and/or ordinary mail.

    S/Julie Owens
Case Manager, (313) 234-5160

---

policies and requirements under Pennsylvania's Inmate Grievance System Policy, which is not the same as Michigan's.